IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Corey L. Frazier, ) | |
| ) | |
| Plaintiff, ) | Case No. 6:11-cv-01434-JMC-JDA |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Wal-Mart Stores East LP, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on Defendant's motion for summary judgment. [Doc. 49.] Plaintiff, proceeding pro se, filed this action alleging claims of race discrimination and retaliation. [Doc. 1.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

Plaintiff filed his Complaint on June 13, 2011. [Doc. 1.] On February 10, 2012, Defendant filed a motion for summary judgment. [Doc. 49.] By Order of this Court issued February 13, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 50.] Plaintiff filed a response on February 23, 2012. [Doc. 53.] The motion is now ripe for review.

**BACKGROUND**

Plaintiff, an African-American male, was hired by Defendant in April 2007 to work in its Greer, South Carolina retail store; Plaintiff most recently worked in the Grocery Reclamations department. [Doc. 1-1 at 6; Doc. 49-1 at 5:14–24.] Defendant has implemented a Violence-Free Workplace Policy stating it "is committed to providing a safe

and violence-free workplace and shopping location for [its] associates, suppliers and customers/members. [Employees] should help maintain an environment that is free of harassment, violence and threats of violence."[1] [Doc. 49-1 at 55.] Specifically, the policy prohibits

> any form of violence or threats of violence in the workplace, including, but not limited to, any conduct or communication (whether direct or indirect) which: 1) harms, damages, injures, harasses, intimidates, bullies, threatens, stalks, taunts, forces, coerces, restrains or confines another person; 2) reasonably invokes fear in another person or reasonably causes another person to fear for his/her health or safety or 3) harms, damages or injures property.

[*Id.*] Plaintiff admitted at his deposition that he received a copy of the Violence-Free Workplace Policy and had read and understood the policy prior to his termination. [*Id.* at 43:7–20]

Additionally, Defendant has implemented a Coaching for Improvement Policy [*id.* at 48–54], which states gross misconduct—such as serious harassment/inappropriate conduct, fighting/assault, and rude/abusive conduct toward a customer or another employee—will not be tolerated and is grounds for immediate termination [*id.* at 51–52]. This policy also allows a manager to seek assistance from the District Manager/Direction of Operations, Regional Personnel Manager, or personnel representative for the area to determine whether an infraction should be classified as gross misconduct. [*Id.* at 52.]

---

[1] The copy of the Violence-Free Workplace Policy provided to the Court indicates it became effective July 19, 2010. [Doc. 49-1 at 55.]

On July 31, 2010, a manager witnessed an altercation between Plaintiff and a fellow employee, Artie Ray ("Ray"), who had asked Plaintiff what to do with damaged soda cans. [Doc. 49-3 at 2.] The manager gave the following account of the incident:

> On Saturday 07/31/2010, at approximately 6:30 am, there was a verbal altercation between Artie Ray (3rd Shift Associate) and Corey Frazier (DSD Receiver). Artie passed by me and asked Corey how he wanted him to handle some damaged drink cans. Corey told him to pour the damaged into the Groc. Rec. sink. I then heard Corey start fussing loudly about Artie not doing his job, and he became louder as he spoke. I stepped in between these two associates and proceeded to find out the problem, while trying to get Corey to calm down. He continued to get louder, kept trying to step past me to get closer to Artie, and made the comment "I don't care...I will take him right here." He also pulled his shirt off during the incident. This altercation was also witnessed by two vendors that Corey was dealing with at the time. I am not sure if Artie had said anything prior to what I began hearing from Corey, but the whole time I was trying to get Corey calmed down, Artie did not say anything back to him. I sent Artie back out to the floor and had to continue talking to Corey so that he would calm down.

[*Id.*] After gathering witness statements and reviewing surveillance footage, Defendant terminated Plaintiff's employment effective September 10, 2010 for gross misconduct and violating Defendant's Violence-Free Workplace Policy.[2] [Doc. 49-2 ¶¶ 2–5.]

On October 21, 2010, Plaintiff filed a charge of race discrimination and retaliation against Defendant with the South Carolina Human Affairs Commission ("SHAC"), which forwarded the charge to the Equal Employment Opportunity Commission ("EEOC") for dual

---

[2] Defendant investigated the incident between Plaintiff and Ray. [Doc. 49-2 ¶ 2.] During the investigation, store manager Dana Hill ("Hill") reviewed surveillance footage of the incident and determined the footage was consistent with witness statements to management that Plaintiff was the aggressor in the incident. [*Id.* ¶ 3.] Because Hill was a new store manager, before proceeding with Plaintiff's termination, he sought assistance from Employment Advisory Services ("EAS"), a group of attorneys in Defendant's corporate office, and Human Resources for his store. [*Id.* ¶ 4.]

filing.[3] [Doc. 1-1 at 4–6.] Specifically, Plaintiff alleged a white employee threw a can at him, continued to harass him, and Plaintiff did not touch the other employee, but Plaintiff was fired and the other employee was not. [Doc. 1-1 at 6.] Plaintiff alleged the reason Defendant gave for firing him was a pretext:

> I contend that I told a white employee not to say anything else to me when he continued to harass me after he threw a can at me. I removed my shirt to see if it had been soiled by the contents of the can that the white employee threw at me. The white employee violated the workplace violence policy in a physical manner when he threw the can at me. He is still employed and I was fired.

[*Id.*] Plaintiff received a right to sue notice from the EEOC on April 14, 2011. [*Id.* at 2–3.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could

---

[3] Plaintiff had previously filed a charge of race and gender discrimination against Defendant in October 2009, alleging a Caucasian female employee in a different department received more weekends off and more claims updates than Plaintiff. *See* Civil Action No. 6:10-CV-02007-JMC-JDA. On August 2, 2010, two days after the incident between Plaintiff and Ray, Plaintiff filed suit against Defendant based on his October 2009 charge of discrimination and an additional claim for a third shift premium. *Id.* Defendant was granted summary judgment as to Plaintiff's claims in that action. *Id.*

4

prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's

position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**DISCUSSION**

**Race Discrimination Claim**

Defendant argues Plaintiff's race discrimination claim must fail because Plaintiff cannot establish a prima facie case of discrimination or that Defendant's reasons for Plaintiff's termination were a pretext for discrimination. [Doc. 49-5 at 12–17.] The Court agrees Defendant is entitled to summary judgment as to Plaintiff's discrimination claim.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In 1991, Congress amended Title VII to include that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* § 2000e-2(m).

As the Fourth Circuit Court of Appeals has explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). First, a plaintiff may survive a motion for summary judgment "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). The Fourth Circuit defines "direct evidence" as evidence that the employer "announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor

7

. . . ." *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982) (citing *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1113 (4th Cir. 1981)). In other words, direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995), *abrogated on other grounds by Desert Palace*, 539 U.S. 90. Circumstantial evidence may "includ[e] but [is] not limited to proof of the claimant's general qualifications, from which the inference of . . . discrimination may rationally be drawn independently of any presumption [of discrimination]." *Cline*, 689 F.2d at 485 (footnote omitted). To demonstrate an unlawful employment practice in these so-called mixed-motive cases, a plaintiff "need only present sufficient evidence for a reasonable jury to conlcude, by a preponderance of the evidence," that the impermissible factor was a motivating factor, i.e., "direct evidence of discrimination is not required in mixed-motive cases." *Desert Palace*, 539 U.S. at 101–02.

Alternatively, a plaintiff may proceed under the *McDonnell Douglas* "pretext" framework. *Id.* (quoting *Hill*, 354 F.3d at 285). Under this framework, an employee must first prove a prima facie case of discrimination.[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action.

---

[4] To establish a prima facie case of discrimination, a plaintiff must demonstrate (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action; and (4) other employees who are not members of the protected class did not suffer the adverse employment action under similar circumstances. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002); *see also EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 851 n.2 (4th Cir. 2001) ("What is critical with respect to the fourth element is that the plaintiff demonstrate he was not hired (or fired or not promoted, etc.) 'under circumstances which give rise to an inference of unlawful discrimination.'" (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981))).

*Id.* By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and "[t]he presumption, having fulfilled its role of forcing the [employer] to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11 (1993) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). If the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the articulated reason was actually a pretext for retaliation. *McDonnell Douglas*, 411 U.S. at 804.

However, the Fourth Circuit has emphasized that, "[r]egardless of the type of evidence offered by a plaintiff as support for h[is] discrimination claim (direct, circumstantial, or evidence of pretext), or whether []he proceeds under a mixed-motive or single-motive theory, '[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Hill*, 354 F.3d at 286 (last alteration in *Hill*) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)). Further, the court stated,

> To demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that "the protected trait . . . actually motivated the employer's decision." *Reeves*, 530 U.S. at 141, 120 S.Ct. 2097 (internal quotation marks omitted). The protected trait "must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Id.* (internal quotation marks and alterations omitted); *cf. Price Waterhouse* [*v. Hopkins*], 490 U.S. [228,] 277, 109 S. Ct. 1775 (O'Connor, J., concurring) (noting that "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden" of proving

9

> discrimination); *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 678 (7th Cir. 2002) (noting that the pertinent inquiry is whether the decisionmaker, as opposed to other managers or subordinates, evaluated the aggrieved employee based upon discriminatory criteria).

*Id.* Thus, whether a plaintiff proceeds under the first or second avenue of proof, the plaintiff's ultimate burden is to demonstrate the employer's adverse employment action was motivated, at least in part, by discrimination.

In this case, the Court must determine whether Plaintiff has demonstrated a genuine issue of material fact remains as to whether Defendant's termination of Plaintiff was motivated, at least in part, by racial discrimination.[5] In his October 2010 charge of discrimination, submitted with his Complaint, Plaintiff contends a white employee threw a can at him and harassed him in violation of Defendant's workplace violence policy and Plaintiff was fired even though he did not touch the other employee. [Doc. 1-1 at 6.] Liberally construing Plaintiff's pleadings, Plaintiff argues these allegations demonstrate his termination was motivated, at least in part, by racial discrimination. [*See id.*; *see also* Doc.

---

[5] Plaintiff does not indicate which avenue of proof he has chosen [*see, e.g.*, Doc. 53 (response in opposition to Defendant's summary judgment motion)], but, as explained, the ultimate question is the same under either avenue of proof. Therefore, the Court will consider whether a genuine issue of material fact remains regarding Plaintiff's discrimination claim or whether Defendant is entitled to summary judgment on Plaintiff's discrimination claim based on Plaintiff's showing as to whether discrimination was a motivating factor in his termination.

However, the Court also notes Plaintiff does not present any direct evidence of discrimination and has failed to establish a prima facie case of discrimination. With respect to the elements of a prima facie case of discrimination, Plaintiff has established the first three elements—(1) he is a member of a protected class; (2) he suffered an adverse employment action, termination; (3) the Court assumes he was performing his job duties at a level that met Defendant's legitimate expectations at the time of his termination. However, Plaintiff has failed to establish other employees who are not members of the protected class did not suffer the adverse employment action under similar circumstances. As explained below, Plaintiff's conclusory allegations regarding the July 31, 2010 incident are not corroborated by the evidence before the Court, and Plaintiff acknowledges a Caucasian employee was terminated for similar conduct. Therefore, Plaintiff has failed to establish the fourth element of a prima facie case of race discrimination.

53 at 5–7 (stating Ray was punished for his conduct in the July 31, 2010 incident, but not to the point of termination, and no manager statement said Plaintiff threatened Ray).]

Upon review, the Court concludes Plaintiff has failed to demonstrate a genuine issue of material fact remains as to his discrimination claim and that Defendant is entitled to summary judgment regarding this claim.[6]  Plaintiff's version of the events of July 31, 2010—which Plaintiff only presents through conclusory allegations—is not corroborated by the evidence before the Court.  Rather, the evidence demonstrates Plaintiff violated the Violence-Free Workplace Policy by being aggressive and threatening toward Ray; for example, Plaintiff yelled at Ray, stated he would "take [Ray] right here," and removed his shirt.[7]  [Doc. 49-3 (statements from a manager who witnessed the incident, Ray, and a manager who interviewed Plaintiff after the incident); Doc. 49-1 Ex. 5 (video of the incident).]  Further, Plaintiff acknowledges a Caucasian employee was terminated for

---

[6] Plaintiff also makes several allegations regarding actions taken by Kristin Gray, counsel for Defendant, which Plaintiff labels as violative of his civil rights.  [*See* Doc. 53.]  Ms. Gray is not a party to this action, and thus, the Court declines to address Plaintiff's allegations regarding Ms. Gray.

[7] During his deposition, Plaintiff testified Ray threw the damaged can at Plaintiff.  [Doc. 49-1 at 10:7, 24:13–16.]  When shown the video footage of the alleged can throwing—which shows the can being tossed into a gray container to the left of Plaintiff—Plaintiff explained the alleged can throwing was not the source of his lawsuit but how Defendant handled the situation.  [*Id.* at 36:13–38:16.]  Plaintiff also testified some liquid from the can splashed onto his arm and his dark blue shirt and that Ray mumbled under his breath, "do your job, you need to do your job," so Plaintiff pulled his shirt off and began screaming at Ray in the presence of an assistant manager and two vendors.  [*Id.* at 10:13–17, 14:18–25, 17:1–19:13, 32:20–33:7, 38:8–41:18.]  Plaintiff further testified:

> Yes, I was upset. Yes, I was screaming . . . . I was upset and screaming at Artie Ray . . . . So, yes, I was upset because he knew what to do with that item.

[*Id.* at 6:21–7:13.]  Plaintiff admits in his testimony that Ray never raised his voice to him or used any foul language; had never threatened him with violence, bullied, or hurt him; had never yelled or screamed at him; had never stalked, intimidated, or taunted him; and had never coerced, hit, or put his hands on him, damaged his property, or called him any names.  [*Id.* at 22:24–23:4, 23:17–24:5, 24:17–20.]

similar conduct.[8]  [Doc. 49-1 at 29:10–30:22; Doc. 53 at 3.]  Without more, and with record evidence contradicting his position, Plaintiff's bare allegations fail to demonstrate his race was a motivating factor in Defendant's decision to terminate him.  Therefore, the Court recommends Defendant's motion for summary judgment be granted as to Plaintiff's race discrimination claim.

**Retaliation Claim**

Defendant argues Plaintiff's retaliation claim must fail because he cannot establish a prima facie case of retaliation or that Defendant's decision to terminate Plaintiff for threatening another employee was a pretext for retaliation.  [Doc. 49-5 at 17–19.]  The Court agrees Defendant is entitled to summary judgment as to Plaintiff's retaliation claim.

Under Title VII, an employer is forbidden from taking action that discriminates against an employee because that employee has either "opposed any practice made an unlawful employment practice by this subchapter" or has "made a charge, testified, assisted, or participated in a Title VII investigation proceeding, or hearing under this subchapter."  42 U.S.C. § 2000d-3(a).  The purpose of this anti-retaliation provision is to prevent "an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's most basic guarantees."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006).  Thus, through the two clauses of the

---

[8] Plaintiff argues Defendant violated its own policy by terminating Plaintiff after a 40-day investigation rather than immediately terminating Plaintiff like Defendant did in the situation involving similar conduct. [Doc. 53 at 2–3.] However, Plaintiff's argument fails to demonstrate a genuine issue of material fact remains or that summary judgment should not be granted in Defendant's favor; rather, that Defendant fully investigated the July 31, 2010 incident before terminating Plaintiff weighs against finding racial animus motivated Defendant's decision to terminate Plaintiff and supports Defendant's position that summary judgment should be granted in its favor.  Further, Defendant's Coaching for Improvement Policy allows a manager to seek assistance to determine whether any employee's actions constitute gross misconduct.  [Doc. 49 at 52.]

anti-retaliation provision, Title VII protects activities that can be characterized as opposing a practice that is unlawful under Title VII or as participating in a Title VII investigation, proceeding, or hearing. *Id.* at 59 (quoting 42 U.S.C. § 2000e-3(a)); *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (stating "[p]rotected activities fall into two distinct categories: participation or opposition"); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009) (stating the first clause of the anti-retaliation provision is known as the "opposition clause," and the second clause is known as the "participation clause"). Activities protected under the participation clause—(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII—are those "essential to the machinery set up by Title VII," and therefore, Title VII prohibits employers from retaliating against employees who undertake these actions. *Laughlin*, 149 F.3d at 259, 259 n.4 (internal quotation marks omitted) (quoting *Hasimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)).

Like discrimination claims, a plaintiff may prove a retaliation claim through direct evidence or by using the *McDonnell Douglas* burden-shifting framework.[9] *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000); *Cooper v. City of N. Myrtle Beach*, No. 4:10-cv-1676, 2012 WL 1283498, at *6 (D.S.C. Jan. 25, 2012). Similarly, it is ultimately the plaintiff's burden to demonstrate the employer's actions were motivated, at least in part,

---

[9] To establish a prima facie case of retaliation, the plaintiff must demonstrate "(1) [he] engaged in a protected activity, (2) the employer acted adversely against [him], and (3) there was a causal connection between the protected activity and the asserted adverse action." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011).

by an intent to retaliate.[10]  *See McDonnell Douglas*, 411 U.S. at 804; *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007); *Cooper*, 2012 WL 1283498, at *10.

Here, no genuine issue of material fact remains as to Plaintiff's retaliation claim, and the Court concludes Defendant is entitled to summary judgment because Plaintiff has failed to demonstrate retaliation was a motivating factor in his termination—specifically, Plaintiff has failed to show evidence of any causal connection between the filing of his charge of discrimination and his termination.  First, Hill terminated Plaintiff; Hill was not Plaintiff's manager at the time the first charge was filed, and he averred Plaintiff's first charge did not play a part in his termination decision.  [Doc. 49-2 ¶¶ 1, 6.]  Further, by Plaintiff's own admission, Defendant was well aware of the allegations from his first charge and lawsuit as early as October 2009, when he filed the charge [Doc. 49-1 at 3:24–4:1], yet his termination occurred September 10, 2010, almost a year later [*see, e.g.*, Doc. 1-1 at 6].

Where courts have accepted mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality, they have held that temporal proximity must be very close.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  While the Fourth Circuit has not determined the exact degree of temporal proximity that must exist to show a causal nexus between the

---

[10] As previously stated, Plaintiff does not indicate whether he intends to rely on direct evidence or the McDonnell Douglas burden-shifting scheme to establish his claims, but the ultimate question with respect to a retaliation claim is the same under either approach.  Therefore, the Court will consider whether a genuine issue of material fact remains as to Plaintiff's retaliation claim or whether Defendant is entitled to summary judgment on this claim based on Plaintiff's showing as to whether retaliation was a motivating factor in his termination.  The Court also notes Plaintiff has established the first two elements of a prima facie case of retaliation—(1) he engaged in protected activity by filing a charge of discrimination and (2) he suffered an adverse employment action, termination—but, as explained below, has failed to establish the third element, a causal connection between his protected activity and the adverse action.

protected activity and the adverse action, it has indicated a three or four month time lapse is too long to establish a causal connection, if the plaintiff is relying solely on temporal proximity. *Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) ("In this case, at least three to four months separated the termination of [the plaintiff's] employment and the claimed protected activities. We find that this time period is too long to establish a causal connection by temporal proximity alone."). Here, Plaintiff has failed to put forth any evidence of a causal connection; therefore, Plaintiff must rely on temporal proximity alone. However, eleven months elapsed between Plaintiff's first charge of discrimination and his termination, which shows the events did not occur "very close" together in time, and therefore, the eleven-month gap is not sufficient to establish temporal proximity and a causal connection between the two events.

In cases where temporal proximity between the protected activity and an alleged adverse employment action is missing, a plaintiff may provide evidence of retaliatory animus during the intervening period to establish a causal connection. *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (internal quotations and citation omitted). However, Plaintiff has produced no evidence of retaliatory animus between the filing of his charge and his termination. Therefore, the Court finds Plaintiff has failed to establish a causal connection between his protected activity and the adverse employment action and, thus, cannot establish a retaliation claim. Accordingly, the Court recommends Defendant's motion for summary judgment be granted as to Plaintiff's retaliation claim.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendant's motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

May 24, 2012
Greenville, South Carolina

Plaintiff's attention is directed to the important notice on the next page.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).